# Richmond.

## L. J. Upton and D. A. Winslow v. Southern Produce Company.

### May 27, 1926.

1. CORPORATIONS—*Secret Profits of Officers—Stockholder's Suits—Jurisdiction of Equity.*—In the instant case, a stockholder's suit to recover secret profits made by officers of the corporation, while the relief sought was merely pecuniary, still it was to recover secret profits secured by fraud and misrepresentation and only equitable methods of relief would be complete, certain and adequate, therefore equity was the forum to do complete justice between the parties.

2. FRAUD AND DECEIT—*Jurisdiction of Equity—Pecuniary Relief Sought.*—In the English chancery practice, fraud is within the exclusive jurisdiction of the courts of equity, but this rule is very much narrowed in America, and in different States where the relief sought is pecuniary only, the equity jurisdiction and that of the law courts are concurrent, and where the remedy at law is complete and adequate, the equity courts will not take jurisdiction of the case, but where in order to give complete relief equitable methods are necessary, such as an accounting, equity takes jurisdiction, and administers justice according to the flexible rules of that tribunal.

3. CORPORATIONS—*Stockholder's Suit against Officers to Recover Secret Profits—Parties.*—A suit against officers of a corporation to recover secret profits, secured by fraud and misrepresentation, was properly brought in behalf of all the stockholders, as their interests were common and to avoid a multiplicity of suits. The court, if separate suits were brought, would have heard them together as the proper procedure to do justice among all the parties.

4. CORPORATIONS—*Stockholder's Suit against Officers to Recover Secret Profits—Parties.*—In a suit by stockholders against officers of a corporation to recover secret profits acquired by fraud and misrepresentation, the corporation need not be made a party defendant, where plaintiff had no claim against it, it never having received any money belonging to plaintiff.

5. STOCK AND STOCKHOLDERS—*Right to Purchase New Stock—Waiver of Right—Fraud.*—A stockholder may waive his right to share in the distribution of unissued or new stock, and by his conduct ratify an

issue to an outsider. But this principle is applicable only in cases where the sale and purchase are untainted by fraud.

6. CORPORATIONS—*Secret Profits of Officers—Secret Purchase of Treasury Stock by Officers and Sale at Higher Price—Case at Bar.*—In the instant case the president and vice-president of a corporation while negotiating with another corporation for the purchase of all the stock of their own corporation, secretly purchased and caused to be issued to themselves all the treasury stock of their corporation at one hundred dollars a share. They then sold this stock, together with other stock owned by them, to the second corporation at two hundred and fifty dollars a share.

*Held:* That the transaction was in fraud of the stockholders who might recover the profits on the transaction, less the legitimate costs and expenses of the transaction.

7. STOCK AND STOCKHOLDERS—*Sale of Stock to Officers—Misrepresentations of Officers—Case at Bar.*—Officers of a corporation sold their stock to another corporation for two hundred and fifty dollars a share and undertook to obtain from the other stockholders their stock at the same price. The officers made representations to a stockholder that they were only paid two hundred dollars a share for their stock and procured his stock at that price and sold it for two hundred and fifty dollars to the second corporation.

*Held:* That the stockholder could recover the difference, from the officers, between the price paid by them and price received.

8. OFFICERS OF CORPORATION—*Fiduciaries—Purchase of Treasury Stock.*— The principal officers of a corporation, in contemplation of a sale of the corporation to another company, could not legitimately purchase the treasury stock of the corporation from themselves and the treasurer, without disclosure of all the facts to the other directors or stockholders.

9. OFFICERS OF CORPORATION—*Fiduciaries—Duty to Stockholders.*—The officers of a corporation owe the duty of frankness and fair dealing as fiduciaries to all the stockholders and cannot use their positions for their own profit no matter whether they had served the company without pay or had financed the company or not.

10. CORPORATIONS—*Secret Profits of Officers—Equity Seeks Restoration—Case at Bar.*—In administering the equitable remedies in a stockholders suit to recover secret profits from the officers of the corporation, the fundamental theory upon which equity acts is that of restoration— of restoring the defrauded party primarily and the fraudulent party as a necessary incident—to the positions which they occupied before the fraud was committed. Even in such cases, the court applies the maxim, he who seeks equity must do equity, and will thus secure to the wrong doer in awarding its relief whatever is justly and equitably his due. And in the instant case, where the secret profits arose from

a sale of treasury stock to the officers and a resale by them at a higher price, in the accounting plaintiffs are only entitled to the amount of money which they would have received, if the defendants had made the sale in good faith for the benefit of themselves and all the other stockholders, and the accounting should be upon that theory.

11.   PAYMENT OF MONEY INTO COURT—*Stockholders Suit to Recover Secret Profits—Case at Bar.*—It is a common practice for equity courts, where money is obtained by fraud, to compel the party in possession thereof to bring the same into court. In the instant case the defendants cannot complain of an order of the court to that effect. The fund *prima facie* is not theirs but the plaintiff's, and if the court takes possession of the same in order to permit them to establish in the accounting any charges and expenses they may have against the fund, it is difficult to see how they have been prejudiced.

Appeal from a decree of the Circuit Court of the city of Norfolk. .

Decree for complainants.    Defendants appeal.

*Decree amended and affirmed.*

The opinion states the case.

*Henry Bowden* and *N. T. Green,* for the appellants.

*E. R. F. Wells* and *A. B. Carney,* for the appellee.

CHRISTIAN, J., delivered the opinion of the court.

It is necessary to a proper discussion and decision of this case that the facts be set forth fully.

Sometime during the year 1920, the "Old Dominion Transportation Company" was organized for the purpose of operating steamships for the carriage of freight and passengers between the city of Norfolk, Virginia, and the city of New York, New York. It was formed to take the place of and serve the purposes of the Old Dominion Steamship Company, which had for

many years operated a line of boats between those cities, but at that particular time had ceased all operations. Two stock selling campaigns were inaugurated for the sale of stock, which resulted in the sale and issuance of three thousand seven hundred and sixty-six (3,766) shares of stock of the par value of $100.00 each. Of these shares Winslow and Upton and the companies controlled by Upton held one thousand eight hundred and sixty-nine (1,869) shares, and the Southern Produce Company held one hundred (100) shares. By resolution passed by the board of directors on November 23, 1920, the officers of the company were empowered to sell additional stock, provided that the total sales plus the outstanding stock shall not exceed $600,000.00. At a meeting of the board held May 10, 1921, Robert J. Upton, secretary, was empowered to use as much of his time as possible in the sale of stock, and beginning with June 6, 1921, H. G. Blaising was employed to sell additional stock. No additional stock was sold under the above resolution, and all efforts thereunder ceased, although the resolution of 1920 was never rescinded.

D. A. Winslow was president of the company and also a director, and L. J. Upton was vice-president and a director. The company was under-capitalized, and the banks and trust companies of Norfolk loaned it $350,000.00, and the appellants claim that they were personally endorsers upon its paper for $195,-000.00. In its condition of under-capitalization, its business was very much hampered, and the appellants state that some of the Norfolk banks, in 1922, had informed them that the company's notes would have to be paid, thereupon they took up with financiers in Baltimore the subject of securing funds by mortgage of the company's property and assets. That they

were informed if the capital stock was increased to $500,000.00 it would strengthen the prospects of the loan desired. Before or while these negotiations were in progress, Winslow interested Ed. Wolcott, an attorney at law, in the matter of selling the majority of the stock to another shipping concern. Wolcott's efforts resulted in a conference in Washington, D. C., on January 11, 1923, between D. A. Winslow, with whom was Harry K. Wolcott, brother of Ed. Wolcott, and Galen E. Stone, chairman of the board of directors of the Eastern Steamship Company. Stone offered one and one-half shares of stock of the Eastern Steamship Company for each share of stock of the Transportation Company, but this was declined by Winslow. While nothing definite was accomplished at this conference, the negotiations were continued after Winslow and Wolcott returned to Norfolk, and several conferences were had between Wolcott, representing Winslow, and Ed. R. Baird, Jr., representing the Eastern Steamship Company. The appellants did not communicate the fact that they were negotiating for a loan or sale of the stock to any of the other directors or stockholders.

In this condition of affairs, on January 22, 1923, Upton and Winslow caused to be issued to themselves 1,234 shares of treasury stock of the Transportation Company at par, and in payment for them, they gave their joint note for $123,400.00, payable sixty days after date, without interest and security except the stock purchased as collateral. No one knew of the issuance of this stock to the appellants except Winslow and Upton, respectively president and vice-president, who seemed to finance and manage generally the company, Robert J. Upton, treasurer, a brother of Luther J. Upton, and August Winslow, general manager

of the company, who was a nephew of D. A. Winslow. By the issuance of this treasury stock, the appellants became the holders of at least 3,000 shares of the stock of the company, more than a majority thereof.

On February 23, 1923, L. J. Upton, at the request of his associate, D. A. Winslow, went to New York for an interview with Galen B. Stone of the Eastern Steamship Lines, which resulted in the sale to the Eastern Steamship Liens, Inc., by Upton and Winslow, of their 3,000 shares of the entire outstanding stock of the Transportation Company of 5,000 shares at the price of $250.00 per share, and an agreement upon their part to use their best efforts to secure from the holders of the remaining 2,000 shares of stock, their stock at the same price.   This agreement was reduced to writing in the shape of a letter with certain conditions and undertakings upon the part of Upton and Winslow therein contained, and was accepted by them on February 26, 1923.   This contract will be set forth in full further on in this opinion, as it is the entire basis of this suit.

Upon Upton's return to Norfolk, he and Winslow in interviews with the reporters of the various daily papers, stated that they sold their stock at $200.00 per share and were prepared to pay each and every stockholder that amount in cash for each share of the balance of the stock when presented at the office of the company. The Southern Produce Company, the appellee, was the owner of 100 shares of stock.   Judge C. W. Coleman, president of the Southern Produce Company, when he read this announcement in the Virginian-Pilot newspaper, called up the office of the Transportation Company, and being assured that the statement was correct, sent the certificate for the 100 shares of its stock by A. B. Carney, secretary of the Southern Produce Company,

to the Transportation Company's office, and received Winslow's check for $20,000.00 in full payment for same, and the stock endorsed in blank was delivered in that office. Subsequently it was learned that the appellants received more for the stock than stated to the reporters and published in the newspapers; and further the method of the purchase of the treasury stock by the appellants, and the fact that they paid their note given for this stock out of the purchase money paid them by the Southern Produce Company and retained the balance, amounting to nearly two hundred thousand dollars, as their profits.

The Southern Produce Company thereupon filed a bill in equity on behalf of itself and all other stockholders who might desire to become parties thereto, in the circuit court of the city of Norfolk, for the purpose of an accounting and to recover the difference between the price received by the appellants for its stock and the amount paid therefor by reason of their false misrepresentations, and to recover its *pro rata* share for the treasury stock fraudulently purchased and sold by them. The appellants demurred to this bill and assigned various grounds of demurrer, set out in seven distinct and separate paragraphs. These several grounds of demurrer may be stated in substance to be: That the plaintiff had adequate remedy at law and should have sued for damages; that if equity was the proper forum for the suit, the bill should not be on behalf of the plaintiff and other stockholders, and that the suit should have been against the Transportation Company, or at least it should be made party to this suit. This demurrer was overruled, and the appellants set forth this as one of their assignments of error.

[1–4] The learned chancellor was right in over-

ruling the demurrer, as there was no merit in any of their grounds of demurrer. In the English chancery practice, fraud is within the exclusive jurisdiction of the court of equity, but this rule is very much narrowed in America, and different States where the relief sought is pecuniary only, the equity jurisdiction and that of the law courts are concurrent, and where the remedy at law is complete and adequate, the equity courts will not take jurisdiction of the case, but where in order to give complete relief equitable methods are necessary, such as an accounting, equity takes jurisdiction, and administers justice according to the flexible rules of that tribunal. Pomery's Equity Jurisprudence, section 914. In the instant case, while the relief sought was merely pecuniary, still it was to recover secret profits secured by fraud and misrepresentation and only equitable methods of relief would be complete, certain and adequate, therefore equity was the forum to do complete justice between the parties. The suit was properly brought in behalf of all the stockholders, as their interests were common and to avoid multiplicity of suits. The courts, if separate suits were brought, would have heard them together as the proper procedure to do justice among all the parties. The plaintiff had no claim against the Transportation Company. It had never received any money belonging to the plaintiff, and by reason of the sale of all the capital stock was the property of the Eastern Steamship Company, therefore there could be no reason why it should be impleaded by its former stockholders.

Upton and Winslow were examined as adverse witnesses. They gave an account of their services to the Transportation Company as officers thereof, and the negotiations which resulted in the sale of the stock. The written contract of sale was produced and filed as an exhibit, and is as follows:

"February 23, 1923.

"LUTHER J. UPTON and
"D. ALBERT WINSLOW,
    "Norfolk, Va.

"GENTLEMEN:

"We are writing this letter to confirm the understanding reached at our conference today with respect to our purchase of the stock of Old Dominion Transportation Company, a Virginia corporation, as follows:

"1. You are to deliver to us on Monday, February 26, 1923, at the office of Messrs. Hayden, Stone & Co., 25 Broad street, New York City, certificates in negotiable form representing 3,000 shares of this stock, and we are thereupon to pay you in cash the sum of $250.00 for each share.

"2. You undertake to use your best efforts to induce the holders of the remaining 2,000 shares of stock of Old Dominion Transportation Company to sell their shares to us on or before April 1, 1923, at the same price, and we agree to buy at this price any such additional shares which may be tendered to us on or before said date.

"3. You undertake to bring about not later than April 1, 1923, the resignations of all the directors and officers of Old Dominion Transportation Company, in order that we as owners of a controlling interest of the stock may substitute our own representatives. You undertake that, pending the substitution of these representatives, the present management of Old Dominion Transportation Company will conduct the business of the company in the ordinary fashion; that no dividend or other distribution shall be made to the stockholders or otherwise, and that no contracts or commitments except such as are incidental to current operations will be entered into. You further undertake that the

present management will arrange for the extension of the company's bank loans to a date not earlier than June 1, 1923.

"4. We are buying the stock of Old Dominion Transportation Company in reliance upon the following representations which shall be deemed to be in the nature of warranties by you, namely:

"(a) That the total outstanding capital stock of the company consists of 5,000 shares of common stock of the par value of $100.00 each.

"(b) That the balance sheet, bearing date not earlier than December 31, 1922 (to be submitted prior to our purchase of the stock), shall reflect with substantial correctness the condition of the company and of its date, and that the present condition of the company, save for changes due to current operations in the interval, is substantially the same as indicated by such balance sheet.

"(c) That the total liabilities of the company as of the date of this letter do not exceed the current assets of the company by more than $600,000 and that you will be personally responsible to us for any net indebtedness in excess of $600,000. Liabilities shall be taken to include all indebtedness of the company of every character, and also the amount of any claims for federal or other taxes, which have their origin in transactions or events occurring prior to the date of this letter, and current assets shall be taken to include cash in bank, marketable securities (at market value) and collectible accounts.

"(d) That the company has no contracts with officers or employees extending beyond the end of the current calendar year, and has no other contracts or commitments of any kind whatsoever, save short term commitments incident to current operations, except leases

of piers in New York City and Norfolk, copies of which pier leases will be submitted to you before the purchase of the stock.

"Provision is made at the end of this letter for its being signed by you, whereupon this letter shall constitute a contract between you and us, obligating us to the purchase of the stock at the times and on the terms above specified, and obligating you to the delivery of 3,000 shares of such stock and to the performance of the undertakings, representations and warranties hereinabove expressed.

"Very truly yours,

"EASTERN STEAMSHIP LINES, INC.

"By: (sgd.) CALVIN AUSTIN.

"The foregoing letter correctly states the agreement between the Eastern Steamship Lines, Inc., and ourselves, and is accepted by us.

"(Sgd.) LUTHER J. UPTON,

"(Sgd.) D. ALBERT WINSLOW.

"Dated February 26, 1923."

[5-9] When the case came on for hearing upon the pleadings, depositions and exhibits, and was argued by counsel, the learned chancellor decided that the Southern Produce Company had as one of the stockholders of the Transportation Company a preemptive right to its *pro rata* number of shares of the treasury stock sold by Upton and Winslow; and that the $5,-000.00, the difference between the price received for its stock and the amount paid it by Upton and Winslow, and the sum of $4,914 received as profits from its share of the treasury stock, was the money of the plaintiff, subject, however, to its liability for its part of any sums that the defendants had to pay the Eastern Steamship Company by reason of their guarantee contained in the

agreement of February 23-26, 1923. This decision was embodied in the decree of the court entered on the 7th day of November, 1924. In addition to the determination of the right of the plaintiff to the above sums of money, it was ordered that the defendants pay the above amounts into court, and that the case be referred to a special commissioner to ascertain the amounts paid and to be paid by the defendants on account of their guarantee. From this decree the defendants appealed, and have assigned errors to this decree, which will be considered in the order set forth in their petition.

The first error assigned is to the finding of the court that the Southern Produce Company had a preemptive right to the profit upon 32.76 shares of the treasury stock, or rather that the defendants were *bona fide* purchasers of this treasury stock and the plaintiff had no right in the same, because it had never exercised this right, when for eighteen months it knew that the stock was for sale. Numerous text-writers and cases are cited in the appellants' petition for an appeal for the proposition that a stockholder may waive his right to share in the distribution of unissued or new stock, and by his conduct ratify an issue to an outsider. That principle of law is unquestionably sound, but it is applicable only in cases where the sale and purchase are untainted by fraud. The reading of this record must satisfy any unprejudiced person that Upton and Winslow, who were largely involved financially with the Transportation Company, that from its inception had a hard struggle for existence, would not in good faith put an additional $124,900.00 into the company for stock, when it could have been purchased in the open market for less than par, and industrious campaigning to sell stock eighteen months previous had resulted in failure. The conference in Washington, and the final

sale of the majority of the stock to Eastern Steamship Company with the hope of large profits to themselves, was the inducing cause to their secret purchase of that stock on credit.    As the purpose of the sale to the Eastern Steamship Company was in fact as shown by the agreement a sale of the Transportation Company, they as officers could not legitimately purchase that stock from themselves and R. J. Upton without disclosure of all the facts to the other directors or stockholders.    They were the principal officers of the company and owed the duty of frankness and fair dealing as fiduciaries to all the stockholders, and could not use their positions for their own profit no matter whether they had served the company without pay or had financed the company or not.

The next assignment of error is to the refusal of the court to allow the appellants any part of their expenses and costs incident to securing the purchaser and selling the stock of the company.    The appellee has assigned cross error to the allowance of any sum which the appellants have paid or will have to pay out on account of their undertaking contained in the agreement to guarantee that the debts and liabilities of the Transportation Company shall not exceed $600,000.00.    These assignments of error involve the same equitable principle and will be considered together.    It must be noted that this is a suit not to cancel the contract or repudiate it, but is to recover secret profits or profits secured by breach of a fiduciary relation and concealment.

[10] In administering the equitable remedies in cases of this nature, the fundamental theory upon which equity acts is that of restoration—of restoring the defrauded party primarily and the fraudulent party as a necessary incident—to the positions which they occupied before the fraud was committed.    Even in such cases the court applies the maxim, he who seeks equity

must do equity, and will thus secure to the wrong-doer, in awarding its relief, whatever is justly and equitably his due.   It seems just and in accord with the best reasoned authority, that in the account in this case the plaintiff is only entitled to the amount of money which it would have received, if the defendants had made the sale in good faith for the benefit of themselves and all the other stockholders, and the accounting should be upon that theory.   Pomeroy's Equity Jurisprudence, section 910; *Emma Silver Mining Co.* v. *Grant,* 11 Ch. Div. (Eng.) 918; *Bagnall* v. *Carter,* 6 Ch. Div. (Eng.) 371.

[11] The last error assigned is to the action of the court in requiring the defendants to pay into court the $9,914.00, the amount received by them more than the amount paid the plaintiff for its stock.   It is a common practice for equity courts, where money is obtained by fraud, to compel the party in possession thereof to bring the same into court.   In this case the defendants cannot complain of this order of the court.   The fund *prima facie* is not theirs but the plaintiff's and if the court takes possession of the same in order to permit them to establish in the accounting any charges and expenses they may have against the fund, it is difficult to see how they have been prejudiced.

The decree of the circuit court is right and will be affirmed, except that it will be amended to allow the defendants to prove at the accounting ordered by the trial court such reasonable and proper expenses, and expenditures if any, as they have paid or are bound for, in bringing about the sale of the stock, as a charge against the fund in court.

The decree as amended is affirmed and the case remanded to have the account taken according to this opinion.

*Decree amended and affirmed.*